U.S. v. Stackhouse Good morning. Good morning. May it please the Court, I'm CJA panel attorney Constance VanCleay here on behalf of the defendant and appellant, Angelo Corey Stackhouse. I'd like to reserve three minutes for rebuttal, please. All right. To make the most out of my time today, I'm planning to focus almost exclusively on the Commerce Clause Challenge to Count 7. I would like to also very briefly touch on Count 1, which is transportation across interstate lines with the intent to engage in illegal sexual conduct. So I'll begin with Count 7. This is the kidnapping charge that involves conduct occurring exclusively within Billings, Montana. Leave aside the car and leave aside whatever else the governor was relying on. There was a cell phone involved here, right? And the cell phone appears to have been part of the crime because he apparently called somebody and says, well, I have her now, and then he calls somebody else and says, I got the photos. And there's rampant case law, is there or not, that telephones generally and cell phones in particular are instruments of interstate commerce. So is that the end of the case? Your Honor, there is no dispute here that there were instrumentalities of commerce involved. And that's what that case law gets at, particularly in the Ninth Circuit with Tela Cruz and Nader, that telephones are instrumentalities of commerce. Right. So there's a concession that he, in fact, did use the telephone in furtherance of the kidnapping. The argument is that interstate use of the cell phone alone wouldn't be enough. Did I get that right? Your Honor, I'd like to twist that just a little bit or tweak it just a little bit. There's a concession that the instrumentality was necessarily used in furtherance of the kidnapping, but that the instrumentality of commerce was used in some way during the kidnapping. That instrumentality was used strictly interstate. And the challenge is instead whether Congress has the authority to criminalize intrastate conduct that is also non-commercial, non-economic. I just want to clarify that because I think you said the same thing that I said. Right. I'm trying to narrow the issues at stake here. There isn't an argument that he didn't use a cell phone in furtherance of a kidnapping. So the issue we're dealing with is whether intrastate use of the cell phone alone is enough. Yes, Your Honor. Yes, Your Honor. Under these circumstances, can Congress, is there federal jurisdiction over this crime? Can Congress regulate purely intrastate, non-economic conduct simply because an instrumentality of commerce is used during the commission of the offense? So suppose he had taken the victim on an intrastate rail journey, and I checked and Amtrak does still have passenger rail service, so you could get on and get off within the state of Montana. Do you think that's outside Congress's power to regulate? I think, Your Honor, it's certainly closer. Why is it closer? I think because in that case, you have travel along a channel of commerce for one thing. I do think that... But here you have sort of communication using a federally licensed radio communications device that's part of a intrastate telecommunications network, right? Why is that different from the interstate rail network? Yeah, Your Honor, I think fundamentally it's not really that different. Both of those raise real questions under the Commerce Clause. But then, okay, so if you're going to challenge the application of it in the rail context, it seems like you run into a lot of case law. I mean, forget about Lopez, there are a lot of... The early development of Commerce Clause case law was all about the railroads, right? And so I think to look at that, so to look at what is an instrumentality of commerce, what is Lopez Category 2, which is explaining those prior cases. Under Lopez, and this is a quote, Congress is empowered to regulate and protect the instrumentalities of interstate commerce or persons or things in interstate commerce, even though the threat may come only from intrastate activities. So when we're looking at Lopez Category 2, which Justice Scalia described as self-evident regulations of commerce in Gonzales, when we're looking at Lopez Category 2, we are looking at regulations directly upon the instrumentalities of commerce. What about the basic wire fraud cases statute? Would your argument implicate that? I mean, wire fraud, as I understand it, using a telephone to perpetrate a fraud is a crime whether or not the telephone call is intrastate or intrastate, is that right? That's correct, Your Honor. The wires do... The difference between what you were saying, between your argument here and that, there isn't any, is there? There is a distinction, there are a few distinctions. So in wire fraud, the communications travel out of state and back in state. There's a vast interstate nexus. The same thing is true, certainly, with Mr. Sackhouse's use of a telephone. So the statutes, however, are distinguishable. I haven't been able to find another federal statute that's really analogous to the federal kidnapping statute. If you look for... What is the difference between conducting fraud over a telephone line, calling somebody and saying something that's going to result in their being defrauded, or using it to thwart a kidnapping? What's the distinction? In the wire fraud statute and in other statutes, the prohibition, the act itself that is prohibited is a particular use of the instrumentality of commerce. In contrast, in the federal kidnapping statute, the use of an instrumentality of commerce is the hook that is used to establish federal jurisdiction over interpersonal violence. Additionally... But only if there's a use of the instrumentality of commerce to further the violent crime. So it just seems exactly like the wire fraud situation. There are two key differences here. One is that wire fraud is also economic. The same thing is true of, for example, the statute considered in Dela Cruz, which has to do with the use of an instrumentality of commerce. But it's not regulating. I thought you were talking about economic regulation of the instrumentality of commerce. You're not regulating the use of a telephone economically. I mean, the crime is an economic crime, but what difference does that make? So the bad act, the thing that turns it into something that Congress would want to criminalize is also related to Congress's commerce power. The same thing is true, for example, in the murder-for-hire statute, which... But it may not be at all. I mean, the whole reason why you have the wire fraud hook is because if the discussion took place without the telephone, there wouldn't be an interstate commerce hook necessarily, and the Congress couldn't necessarily regulate it. So if you have a fraud where two people meet in a street corner, that's not a federal crime. But if they talk over the telephone, it is. So I just don't see the distinction. Your Honor, the distinction... So I think we can kind of look at these as maybe on kind of a continuum. So you have the wire fraud statute over here, which is a direct regulation on a particular use of the instrumentality of commerce. It involves... Let me ask you this. Every out-of-circuit case that has considered interstate kidnapping with the use of a cell phone has gone the other way. Would we be creating a circuit split if we accept your argument? Have you found any cases within the Ninth Circuit or elsewhere in the country that has accepted your argument? The case that tracks the analysis that I think should, can, and does apply is Chavarria out of the District of New Mexico. Now, that case was focused specifically on the use of an automobile as an instrumentality of commerce. It did not... It distinguished cases involving telephones, and that was because the Tenth Circuit has binding precedent. Now, the other case, it is true that there are other cases that have rejected this or a similar argument. I think the only other... It does appear that there's a difference between... I mean, I would be troubled if we were just talking about the car, because the car was produced elsewhere, but it's not like Judge Miller's example of a train that's going from New York to California, but the crime happens to occur in Chicago, and it's not like... But a telephone is different, it seems to me, and a telephone is different because it is inherently linked up as a railroad to an interstate system that it can't operate without. So, it is operating as an instrumentality of commerce when it is being used for this purpose. A car that's going from here to there, but happened to come from out of state at some other point, now you're getting somewhat more attenuated. But the telephone's different. Your Honor, a telephone also raises really significant federalism concerns because we all have one with us at every time. If all it takes is the use of a telephone... I understand and share your concern on the policy implications, but the 10th Circuit in U.S. v. Morgan in published decisions already upheld a kidnapping that involves purely interstate use of a cell phone. So, I think we would be creating a circuit split with the 10th Circuit for sure, if we were to accept your argument. But I think the policy concerns you raise, federalizing every really kidnapping involving purely interstate concert, kidnapping offense is a valid one, right? In this day and age, it's hard to do anything without the use of a cell phone. Although in this instance, the use of the phone seems to have been... made the crime part of a larger scheme and a more disturbing one than if it hadn't been used. I actually find... the one part of this case that I do find somewhat troubling is the interstate travel. And if you would address it briefly, I'd appreciate it. Yes, Your Honor. The count one conviction is for traveling across interstate lines with intent to engage in criminal sexual conduct. We know from Flukas that the intent to engage in an illegal sexual act has to be a dominant, motivating, or significant reason compelling the interstate travel. That isn't met here. Mr. Sackhouse traveled to Colorado in order to buy cocaine. He may have intended to engage in sexual conduct, but there is no evidence that supports a finding that he intended, that he took that trip in order to engage in illegal sexual conduct. But if what he intended to do was to engage in sexual activity consensually or not, in other words, one way or another, contingently, is that sufficient? Because that's probably a pretty accurate description. Your Honor, then what we're focused is on... I mean, if it's that he traveled with sort of disregard for whether the sexual activity occurs legally or illegally, it's very hard to find that it's a reason. I don't know how you could find that it is a reason that is compelling the trip. So, no, I don't think that would satisfy it. I'd like to reserve the remainder of my time for rebuttal. All right. Good morning again. Zeno Bacchus from the United States. Judge Nguyen noted the Morgan decision. The United States feels it's the most analogous to the case at Barr. And there's a quote from Morgan where the Tenth Circuit in 2014 said, in neither Lopez or any other case has the Supreme Court limited Congress's regulatory authority with respect to preventing the harmful use of instrumentalities of interstate commerce. There is no question that under the second prong of Logan, that the use of a cell phone, the use of an automobile, and critically, the use of a motel that serves interstate travelers are instrumentalities of interstate commerce. Really? I mean, you think that if the cell phone was added to the case, that the car and the hotel would be sufficient, constitutionally? I do, Your Honor. The general manager of the Bourbon Street Motel, where Mr. Stackhouse took his 10-year-old victim to sexual assault, testified at 3 ER 369 to 371 that that hotel serves interstate travelers. And critically, she was trying to clean up the hotel. Part of Atlanta Motel, the Supreme Court noted that Congress has the right to protect the channels of interstate commerce from- But now that's a different Lopez factor, right? It is, but I think the same theory applies, Your Honor. That is, Congress has the right under the Commerce Clause- So every hotel is an instrument of interstate commerce, and anything that have any crime in a hotel can be a federal crime. Any crime. If it serves interstate travelers, again, we don't just have the hotel. We have all three instrumentalities that were used. But I think it's critical to the crime here. I think when a kidnapping offender takes his victim to a motel for that purpose, Congress is within its right to protect that instrumentality of interstate commerce. Murder in a hotel, if there's a theft in a hotel, if there's a, I don't know, domestic violence in a hotel, anything in a hotel. Well, I readily can see there may be cases where it's too attenuated, Your Honor. But it's not this case. Why is it too attenuated? There may be cases where the hotel is so attenuated to the crime, but here it is a direct connection to the crime of kidnapping, with respect to Mr. Stackhouse taking his victim to that motel. In the event. All you need is a cell phone, which does seem to have been an integral part of the crime. So do we need to decide anything by the cell phone? I don't think you do. Again, I just think that we have all three, but you're right. We could hang our hats strictly on the cell phone. Somebody with a car. I mean, your argument seems to be that any crime in a car is a, if you're driving down the block and you assault somebody, that's a federal crime. And I'll provide the same answer to your question as the hotel's, Your Honor. There may be cases where the car is so attenuated to the crime itself, the Commerce Clause probably is outside the realm. If it occurs in the car, I mean, you're driving, you know, you drive some place to steal something. But as a car, you couldn't steal it. So therefore, it's a federal crime. And there may be instances when that is the case. The Chaviria decision out of New Mexico clearly was concerned with that. Find the 10th Circuit never found that a car in itself was an instrumentality. But again, here, we have all three. And to Your Honor's point, the cell phone alone is sufficient. Nader controls. De La Cruz controls. That's your strongest basis is the use of the cell phone. That's an instrumentality in this case, would you say? Your Honor, I'd say it's the strongest basis. I would also respectfully contend the hotel is a close first. It's up there as well. But yes, using a phone at 3 ER 324 to 325 to contact somebody and say you have the footage of the assault. To use the phone at 3 ER 317 and contact somebody and say you have the victim in your possession is very much using an instrumentality of interstate commerce in furtherance of the commission of the offense. Nader controls as to the uses of cell phone intrastate for purposes of instrumentality of interstate commerce. De La Cruz controlled. In De La Cruz, the defendant made the argument that the third prong of Lopez had to be applied, and the De La Cruz court, this court, rejected that theory. Again, the use of a cell phone was very much in connection with the furtherance of this offense. When you look at the case law, Your Honor, there's other decisions from other circuits looking at 1201. The Wyndham decision from the Fourth Circuit last year. The application, I think, of an automobile and the hotel is sufficient itself, or the automobile and the cell phone, excuse me. But either way, the judge wins point. There would be a creation of a substantial circuit split if he went the other way with respect to finding no jurisdiction on count six and seven. If there are any other questions, I can turn to count one. Go ahead. Looking to count one, again, we're applying the standard of the viewing the evidence in the light most favorable to the government. Whether any finder of fact could find the government met its elements beyond a reasonable doubt. Again, the finder of fact here is the district court, sitting and dispassionately viewing all the evidence. Testimony by Hannah, the victim in this case at 2 ER 99 to 103, is respect to the first trip to Colorado. As this court is aware, there's two trips. In Flucas, the court, or the finder of fact, can look at the totality of how Mr. Stackhouse treated his victim. That case was completely different because here you have a woman who was having apparently consensual sex with him in Billings as well as in Denver, in the first case. She says she was afraid of him. And the main reason she says she was afraid of him is because he had her ID. But that doesn't seem very unusual, that somebody who was meeting somebody regularly, that that person knows how to reach them. And that's basically it. She never says he threatened her or anything until this last incident. But there's a long-term relationship here. So the notion that he was, it seems to me the only way that you get the intent is on a contingent basis, the way I was saying before. If you say his intent was to have sex with her no matter what, either consensual or non-consensual, is that sufficient for the statute? And if it is, maybe you have something. Otherwise, you have a real problem, I think. Your Honor, I think under Flukas that one of his dominant motivating or significant reasons for the trip and transporting Hannah to Colorado, especially that second trip, was to engage in criminal sexual activity. Not the dominant reason. Why criminal, though? I mean, what incident, I mean, are you arguing that all the sex he had with her was criminal because he was giving her cocaine and because he had her ID and because she was subjectively scared? Is that your argument? Your Honor, I think if you look at the totality of how Mr. Stackhouse treated Hannah, and all those coercive elements that you just alluded to- Suppose there was no rape at the end. It never happened. It was just everything else. Could you have brought the same case? If there was no rape on the second trip, Your Honor, I believe we could. The intent, the statute calls for transporting somebody across state lines with the intent to engage in criminal sexual activity. And what's criminal about it up to that point? Well, again, it's his intent when he crossed state lines, crossed to Colorado that second trip, it was his intent that he was going to engage in criminal sexual activity with Hannah. Well, what was criminal about it? Offering Hannah up to his cocaine dealer in Denver. Why is that criminal? I think Hannah- Horribly sordid, disgusting, everything else. Why is it criminal? Your Honor, it's criminal in the sense of how he treated Hannah that first time in Colorado. Hannah testified as to the coercive nature of their sexual relationship. She felt like she didn't have a choice with respect to engaging in sex- She felt like that, but she kept saying, well, I don't really know. I just went along with it. I just went along with it. I was scared. Why were you scared? Because you had my ID. Well, as I say, ordinarily, if you're having sex with somebody, they know how to reach you. So that seems a little strange. So what was it that differentiates this from any other casual sexual relationship that goes on for a while? I would argue a few points, Your Honor. First, the timing and proximity as to when Mr. Stackhouse arrived in Colorado on the second trip and when the criminal sexual activity was perpetrated against Hannah. Number two, all the evidence under Federal Rule 413 that the district- Can you be more specific about that in the first one? Sure. So the criminal sexual activity, both with respect to the first trip, and we will concede that maybe the first trip did not involve criminal sexual activity, but it occurred right after they arrived in Colorado. Okay, so what's the criminal sexual activity other than the rape? With respect to the second trip, Your Honor? Even, well, I think- Disturbing, everything else. She was put in a bad position, but- She testified, sorry to interrupt. She testified, Your Honor, that Hannah testified. She felt like she did not have a choice when Mr. Stackhouse told her to go and have sex with his cocaine dealer. Not because he threatened her. Didn't threaten her, but that's when I think you look at the totality of how Mr. Stackhouse- What is the totality? What is it? What are the circumstances? He didn't threaten her. He was giving her cocaine, so she didn't have a choice if she wanted a cocaine, but that's her voluntary decision. Took a picture of her ID. He took a picture of her ID, but what does that mean? It means he knew where she lived and had a phone number. That's, you know, sort of what people do if they want to reach somebody, and he did reach her often in Billings, and he was going to get in touch with her. He needed to know how to get in touch with her. Oh, Your Honor, I think when a 15-year-old man takes a 20-year-old to Colorado and in a hotel room a number of hours after arriving in Denver that first time and takes a picture of her ID, when that victim asks the 50-year-old man to wear a condom and he refuses, when that 50-year-old man continues to supply cocaine to that 20- Awful, but I just want to know why it's so- And I think when you look at the standard apply here and viewing the evidence in light most favorable of the government and considering the 413 evidence the district court was allowed to consider for propensity that we met the standard with respect to proving count one. And there's no dispute that the sexual conduct on the second trip was criminal, is there? Correct. And so, I mean, this is reviewed, you know, under essentially Jackson against Virginia, right? So, I mean, is it your view that we can infer from the fact that there was interstate transportation followed by criminal sexual activity that that was probably what he intended to do? I mean, isn't that a reasonable inference or an inference that a rational finder of fact could draw? Judge Miller, that's exactly our argument, yes. And we believe the district court sitting dispassionately and viewing all the evidence- But my understanding is that's not your argument. Your argument is that the whole thing was illegal. It was, but for purposes of sustaining a conviction on count one, it really is the intent when he transported Hannah to Denver on that second trip and what transpired in Denver on that second trip. And there's no need to focus on whether the act did occur. It was just intent to commit the act. Correct. And whether somebody could have been charged, anyone could have been charged with criminal sexual activity had the act occurred. But here it did occur. We have the horrible conduct that occurred on that second trip at Mr. Stackhouse's cocaine dealer's house in Denver. And I want to turn again to the 413 evidence. You have Stacy testified to being abducted by Mr. Stackhouse in September of 2019, taken to a hotel room and sexually abused before she could escape. You have Natalie, age 16, being provided what she thought was methamphetamine by Mr. Stackhouse, waking up, and Mr. Stackhouse was in- Both clearly illegal activity. If they'd taken them to Denver, you would have been, no doubt that you would have had a valid conviction. But this was not a minor. And the reason I offer that, Your Honor, is because it can go to propensity evidence with respect to what the district court, sitting dispassionately, taking all reasonable inferences, is allowed to apply in looking at this count. So you're suggesting that you could use the other counts to support this one? Oh, we could use the other counts as well. But the three victims, or two victims I just mentioned, were not counts of the indictment. They were just offered as 413 evidence, Your Honor. Other acts. Unless there's any other questions, I would ask the court to affirm. All right. Thank you. I would just like to clarify that I do agree with Mr. Bacchus that this, what I'm asking for with regard to count seven, it would be in conflict with the decisions of the Sixth and Tenth Circuits in Windham and in Morgan. We'll have a little bit more of an understanding of what the Tenth Circuit thinks when Chavarria is decided. That's on appeal to the Tenth Circuit currently. But I would just like to point out one piece of Windham that I think really gets right to the issue. This is a quote from Windham. Unlike the carjacking statute, so the Court is looking, comparing the kidnapping statute with the Federal carjacking statute, the kidnapping statute is meant to protect people, not an instrumentality of interstate commerce such as cars. This is consistent with the Court's reasoning in Chavarria. The reason that the Court in Chavarria goes the way that I'm asking this Court to go is because the focus is on human kidnapping victims, not on regulating and protecting an instrumentality of commerce itself, which is what Lopez Category 2 is. Thank you. All right, thank you very much for both sides for your very helpful arguments today. The matter is submitted.
judges: BERZON, NGUYEN, MILLER